Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARLA MASSIE, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| APRIA, INC., JOHN G. FIGUEROA, MICHAEL AUDET, JOHN R. MURPHY, NORMAN C. PAYSON, DEVON RINKER, NEIL P. SIMPKINS, LYNN SHAPIRO SNYDER, DANIEL J. STARCK, MIKE S. ZAFIROVSKI, TERRI KLINE, and SUSANNAH GRAY, | (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Marla Massie ("Plaintiff"), by and through her attorneys, alleges upon

information and belief, except for those allegations that pertain to her, which are alleged upon

personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Apria, Inc. ("Apria" or the

"Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"

and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a)

of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to Owens & Minor, Inc., through merger vehicle StoneOak Merger Sub Inc. ("Merger Sub," and totherther with Parent, "Owens & Minor") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a January 7, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Owens & Minor will acquire all the outstanding shares of Apria common stock for $37.50 per share in cash. As a result, Apria will become an indirect wholly-owned subsidiary of Owens & Minor.

3.      Thereafter, on February 7, 2022, Apria filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, the Preliminary Proxy Statement reveals that no committee of independent and disinterested Board members was created to run the sales process.

5.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6.      In violation of the Exchange Act Defendants caused to be filed the materially

deficient Preliminary Proxy Statement on February 7, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Apria, provided by Apria management to the Board and the Board's financial advisors Goldman Sachs & Co. LLC ("Goldman Sachs") and Citigroups Global Markets, Inc. ("Citi") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Goldman Sachs and Citi, if any, and provide to the Company and the Board.

7.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

8.      Plaintiff is a citizen of Arizona and, at all times relevant hereto, has been an Apria stockholder.

9.      Defendant Apria, Inc. provides integrated home healthcare equipment and related services in the United States. Apria is incorporated in Indiana and has its principal place of business at 7353 Company Drive, Indianapolis, Indiana 46237.  Shares of Apria common stock are traded on the Nasdaq under the symbol "APR."

10.      Defendant John G. Figueroa ("Figueroa") has been a Director of the Company at all relevant times.

11.      Defendant Michael Audet ("Audet") has been a director of the Company at all

relevant times.

12.     Defendant John R. Murphy ("Murphy") has been a director of the Company at all relevant times.

13.     Defendant Norman C. Payson ("Payson") has been a director of the Company at all relevant times.

14.     Defendant Devon Rinker ("Rinker") has been a director of the Company at all relevant times.

15.     Defendant Neil Simpkins ("Simpkins") has been a director of the Company at all relevant times.

16.     Defendant Lynn Shapiro Snyder ("Snyder") has been a director of the Company at all relevant times.

17.     Defendant Daniel J. Starck ("Starck") has been a director of the Company at all relevant times.  Starck also serves as the company's Chief Executive Officer ("CEO").

18.     Defendant Mike S. Zafirovski ("Zafirovski") has been a director of the Company at all relevant times.

19.     Defendant Terri Kline ("Kline") has been a director of the Company at all relevant times.

20.     Defendant Susannah Gray ("Gray") has been a director of the Company at all relevant times.

21.     Defendants identified in ¶¶ 10 – 20 are collectively referred to as the "Individual Defendants."

22.     Non-Party Owens & Minor together with its subsidiaries, operates as a healthcare solutions company in the United States and internationally. It operates through two segments,

Global Solutions and Global Products. Owens & Minor has its headquarters in Richmond, Virginia. Shares of Owens & Minor common stock are traded on the Nasdaq under the symbol "OMI."

23.     Non-Party Merger Sub is a wholly owned subsidiary of Owens & Minor created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

27.     Apria, Inc. provides integrated home healthcare equipment and related services in

the United States. The Company offers home respiratory therapies, including the supply of stationary and portable home oxygen equipment, and non-invasive ventilators; obstructive sleep apnea therapy devices comprising continuous positive airway pressure and bi-level positive airway pressure devices, and patient support services; and negative pressure wound therapy products. It also provides a range of home medical equipment and other products, and services for patients with home care needs; and clinical and administrative support services, and related products and supplies to patients. The Company was incorporated in 2018 and is headquartered in Indianapolis, Indiana.

28.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the November 4, 2021 press release announcing its 2021 Q3 financial results, the Company reported net revenue of $287.2 million, up 3.8% compared to $276.8 million as well as net income of $22.8 million, or $0.60 per diluted share, up 300.1% from $5.7 million

29.     Speaking on the results, CEO Defendant Stark said, "We delivered solid third quarter 2021 financial results that were reflective of our continued execution and operational improvements building on momentum from the first half of the year, despite external headwinds. Third quarter revenue was in-line with our guidance while Adjusted EBITDA and Adjusted EBITDA less Patient Equipment Capex were at the high end or better than our forecast,"…."We continue to see strong new patient volume for oxygen driven by the Delta variant which we expect to remain at elevated levels compared to historical run rates. We also continue to see elevated new patients seeking OSA treatment, and I am proud of the entire Apria team for their perseverance and commitment of effectively working with patients as we manage through the equipment

shortages driven by the disruption created by the Philips recall and other supply chain challenges."

30.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Apria. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

31.     Despite this upward trajectory, the Individual Defendants have caused Apria to enter into the Proposed Transaction without providing requisite information to Apria stockholders such as Plaintiff.

***The Flawed Sales Process***

32.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

33.     Notably, the Preliminary Proxy Statement indicates that no special committee of independent and disinterested Board members was created to run the sales process.

34.     Additionally, the Preliminary Proxy Statement indicates that no market check for potentially interested third parties was conducted by the Board, or by anyone on the Board's behalf, at any point during the sales process.

35.     Moreover, while the Preliminary Proxy Statement indicates that Citi was engaged as an additional second financial advisor at a late stage of the sales process, it provides no information whatsoever regarding Citi's specific role in the sales process, whether it provided any fairness opinion and/or financial analyses to the Board regarding the Proposed Transaction, the specific nature of those financial analyses, or what compensation the Board gave or promised to Citi in exchange for their services relating to the Proposed Transaction.

36.     Furthermore, the Preliminary Proxy Statement Provides no information whatsoever as to why the engagement of multiple financial advisors was necessary, especially considering the Board's original financial advisor, Goldman Sachs, will receive $21.1 million in compensation for its services relating to the Proposed Transaction.

37.     The Preliminary Proxy Statement also fails to provide the specific reasoning why the Board did not require the inclusion of a "majority-of-the-minority" voting provision in the Proposed Transaction in order to secure the interests of the public stockholders of the Company. Notably, large stockholders representing approximately 42.9% of the voting stock of Apria have entered into voting and support agreements whereby they have pledged to vote in favor of the Proposed Transaction, making it all but certain that it will be consummated.

38.     In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Owens & Minor, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

39.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

40.     On January 10, 2022, Apria and Owens & Minor issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **RICHMOND, Va. & INDIANAPOLIS**--(BUSINESS WIRE)--Jan. 10, 2022--
> Owens & Minor, Inc. ("Owens & Minor") (NYSE: OMI) and Apria, Inc. ("Apria")

(Nasdaq: APR) today announced that the companies have entered into a definitive agreement pursuant to which Owens & Minor will acquire Apria for $37.50 in cash per share of common stock, representing an equity value of approximately $1.45 billion.

This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20220110005291/en/

"I'm very excited about the acquisition of Apria, which will strengthen our total company value proposition. The combination of two complementary businesses in Byram Healthcare and Apria will enable us to better serve the entire patient journey - through the hospital and into the home - ultimately furthering our mission of Empowering Our Customers to Advance Healthcare," said Edward A. Pesicka, President & Chief Executive Officer of Owens & Minor. "In addition, this transaction diversifies our total company revenue stream by expanding our presence in the higher-growth home healthcare market."

Pesicka added, "We are impressed by what Apria has built for its customers, and I look forward to welcoming Dan Starck and the Apria team to Owens & Minor upon close."

"I am energized and enthusiastic to join Owens & Minor," said Dan Starck, Chief Executive Officer of Apria. "Both companies share cultures fueled by a commitment to customers, patients, teammates and the communities we serve. We look forward to joining together and delivering the highest quality healthcare solutions to our customers."

**Strategic Rationale**
- Strengthens total company value proposition, enables us to better serve the entire patient journey and positions Owens & Minor as a leader in the home healthcare market. The transaction builds upon Owens & Minor's strong capabilities in product manufacturing and healthcare services.
- Accelerates growth and diversifies revenue base by expanding our presence in the higher-growth home healthcare market.
- Accretive to revenue, adjusted EBITDA, adjusted earnings per share, and enhances our free cash flow generation, enabling Owens & Minor to rapidly deleverage while continuing to invest across the business.
- Expands our Patient Direct platform with access to over 90 percent of insured healthcare customers in the U.S.
- Broadens our Patient Direct product portfolio by combining our strength in diabetes, ostomy, incontinence, and wound care, with Apria's product portfolio strength in home respiratory, obstructive sleep apnea, and negative pressure wound therapy. These product portfolios are complementary and do not overlap as many of these products are needed to treat the same and multiple chronic and acute conditions.

- Increases the attractiveness to Payors, Providers, and Patients due to the broader product portfolio, combined with our scale, geographic footprint, and delivery model.
- Creates a platform for future growth within this highly fragmented and growing space, with an approximate $50 billion total addressable market.
- Enables the acceleration of support for our hospital customers seeking to expand into home healthcare delivery.

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, Owens & Minor will acquire Apria for $37.50 in cash per share of common stock, representing an equity value of approximately $1.45 billion, as well as the assumption of debt and cash for a total transaction value of approximately $1.6 billion.

This price per share represents a 26% and 24% premium over Apria's closing share price on January 7, 2022 and 30-day volume weighted average price, respectively.

The transaction is subject to customary closing conditions, including the Hart Scott Rodino Act and other regulatory approvals and the approval of Apria's stockholders, and is expected to close during the first half of 2022.

***Potential Conflicts of Interest***

41.    The breakdown of the benefits of the deal indicate that Apria insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Apria.

42.    Notably, Company insiders, currently own large, illiquid portions of Company stock which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction. However, while the Preliminary Proxy Statement provides the following information, it fails to disclose an accounting of how much merger consideration will be afforded to Company insiders as a consequence of the consummation of the Proposed Transaction and the cashing out of these amounts:

| Name of Beneficial Owner | Number of Shares | Percent (%) |
|---|---|---|
| ***Significant Stockholders:*** | | |
| Apria Holdings LLC[1] | 14,187,515 | 39.8% |
| Entities affiliated with Deerfield Management Company, L.P.[2] | 2,431,417 | 6.8% |
| Victory Capital Management Inc.[3] | 1,970,603 | 5.5% |
| The Bank of New York Mellon Corporation[4] | 1,806,410 | 5.1% |
| Entities affiliated with American Century Investment Management Inc.[5] | 2,078,951 | 5.8% |
| | | |
| ***Directors and Named Executive Officers:*** | | |
| John G. Figueroa | 500,003 | 1.4% |
| Michael Audet[6] | — | — |
| Susannah Gray | — | — |
| Michael Bryant-Hicks | — | — |
| Teresa Kline | — | — |
| John R. Murphy[7] | 3,945 | * |
| Norman C. Payson, M.D.[8] | — | — |
| Devon Rinker[6] | — | — |
| Neil P. Simpkins[6] | — | — |
| Lynn Shapiro Snyder[9] | 16,311 | * |
| Daniel J. Starck[10] | 702,967 | 1.9% |
| Mike S. Zafirovski | 122,775 | * |
| Debra L. Morris[11] | 239,253 | * |
| Mark E. Litkovitz[12] | 93,454 | * |
| Robert P. Walker[13] | 175,991 | * |
| Directors and executive officers as a group (17 persons)[14] | 2,014,791 | 5.5% |

43.     Additionally, Company insiders also own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

**Estimated Payments for Unvested Equity Awards Table**

| Executive Officers and Directors | Aggregate Amount Payable for Unvested Apria RSUs ($)(1) | Aggregate Amount Payable for Unvested Apria PSUs ($)(2) | Aggregate Amount Payable for Unvested Apria LTIP Awards ($)(3) | Aggregate Amount Payable for Unvested Apria SARs ($)(4) |
|---|---|---|---|---|
| ***Directors (excluding Daniel J. Starck)*** | | | | |
| John G. Figueroa | 189,713 | — | — | — |
| Michael Audet | — | — | — | — |
| John R. Murphy | 189,713 | — | — | 850,832 |
| Norman C. Payson, M.D. | — | — | — | — |
| Devon Rinker | — | — | — | — |
| Neil P. Simpkins | — | — | — | — |
| Lynn Shapiro Snyder | 189,713 | — | — | 850,832 |
| Mike S. Zafirovski | 189,713 | — | — | — |
| Teresa Kline | 189,713 | — | — | — |
| Susannah Gray | 189,713 | — | — | — |
| ***Named Executive Officers*** | | | | |
| Daniel J. Starck | 1,027,613 | 2,055,225 | 169,607 | 4,530,051 |

| | | | |
|---|---|---|---|
| Debra L. Morris | 450,563 | 901,125 | 84,803 | 2,264,253 |
| Robert P. Walker | 132,788 | 265,575 | 63,602 | 850,832 |
| Mark E. Litkovitz | 132,788 | 265,575 | 63,602 | 850,832 |
| Raoul Smyth[5] | — | — | 63,602 | — |
| **All Other Executive Officers as a Group[6]** (3 persons) | 654,450 | 1,308,900 | 127,205 | 3,633,698 |

44.     In addition, certain employment agreements with certain Apria executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash ($)[1] | Equity ($)[2] | Pension/ NQDC ($) | Perquisites /Benefits ($)[3] | Tax Reimbursement ($)[4] | Other ($)[5] | Total ($)[6] |
|---|---|---|---|---|---|---|---|
| Daniel J. Starck | 3,849,561 | 7,782,496 | — | — | — | — | 11,632,147 |
| Debra L. Morris | 2,059,770 | 3,700,744 | — | — | — | — | 5,760,514 |
| Robert P. Walker | 1,284,126 | 1,312,797 | — | — | — | — | 2,596,923 |
| Mark E. Litkovitz | 1,216,998 | 1,312,797 | — | — | — | — | 2,529,795 |
| Raoul Smyth(7) | — | 63,602 | — | — | — | — | 63,602 |

45.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46.     Thus, while the Proposed Transaction is not in the best interests of Apria, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

47.     On February 7, 2022, the Apria Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

48.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

a.   Specific reasoning as to why no committee of the Board composed of independent and disinterested directors was created to run the sales process;

b.   Specific reasoning as to why no market check for potentially interested third parties was conducted by the Board or by anyone on its behalf during the sales process;

c.   Specific reasoning why the Board decided to engage the additional financial advisor Citi;

d.   Regarding Citi's services as financial advisor, the Preliminary Proxy Statement fails to disclose the following specific information:

i.   Citi's specific role in the sales process;

ii.   Whether Citi provided any fairness opinion and/or financial analyses to the Board regarding the Proposed Transaction;

      iii.   The specific nature of and terms of any provided fairness opinion and/or financial analyses created by Citi and given to the Board regarding the Proposed Transaction;

      iv.   The specific compensation given or promised to Citi in exchange for their services relating to the Proposed Transaction;

e.   Whether the confidentiality agreements entered into by the Company with Owens & Minor differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

f.   The specific reasoning as to why the Board did not require the inclusion of a "majority-of-the-minority" voting provision in the Merger Agreement;

g.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Owens & Minor, would fall away; and

h.   Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Apria's Financial Projections*

49.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for Apria provided by Apria management to the Board, Goldman Sachs, and Citi and relied upon by Goldman Sachs in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

50.    Notably the Preliminary Proxy Statement reveals that as part of its analyses, Goldman Sachs noted that, "Certain internal financial analyses and forecasts for Apria prepared by its management, as approved for Goldman Sachs' use by Apria (the "Forecasts")."

51.    Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Apria management provided to the Board, Goldman Sachs, and Citi.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

52.    With regard to the Financial Projections prepared by Apria Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

        a.   Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest income, interest expense, income taxes, depreciation and amortization, and specific "other non-recurring items typically identified in Apria's financial statements";

b.  Patient Equipment Capex, including all underlying necessary metrics, adjustments, and assumptions, including specifically: patient equipment received and the net book value of dispositions of patient equipment; and

c.  Unlevered Free Cash Flow, including all underlying necessary metrics, adjustments, and assumptions, including specifically: all underlying metrics needed to determine EBIT (which is Adjusted EBITDA less depreciation and amortization), estimated cash taxes, depreciation and amortization, capital expenditures and other cash flow items.

53.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

54.     Additionally, the fairness opinion provided by Goldman Sachs makes numerous references to a second set of projections referred to as the "Corrected Forecasts", however no such projections were provided in the Preliminary Proxy Statement.  These Corrected Forecasts must be disclosed in order to provide Plaintiff and other Apria public stockholders a complete picture of Apria's financial health and the Proposed Transaction.

55.     This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

56.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Goldman Sachs' financial analyses, or make an informed decision whether to vote in favor of the Proposed

Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Goldman Sachs*

57.    In the Preliminary Proxy Statement, Goldman Sachs describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

58.    With respect to the *Illustrative Present Value of Future Share Price Analysis*, the Preliminary Proxy Statement fails to disclose the following:

a.  The specific illustrative implied future enterprise values of Apria as of September 30 for each of fiscal years 2021, 2022 and 2023 calculated;

b.  The specific inputs and assumptions used to determine the utilized enterprise value to next-twelve-month ("NTM") Adjusted EBITDA Less Patient Equipment Capex multiples ranging from 9.5x to 11.5x;

c.  Apria's net debt as of September 30, 2021;

d.  The number of fully-diluted shares of Apria common stock outstanding (using the treasury stock method) as of January 5, 2022;

e.  The specific inputs and assumptions used to determine the utilized illustrative discount rate of 8.8%;

f.  Apria's estimated cost of equity utilized;

g.  The beta for Apria utilized; and

     h. The specific "certain financial metrics for the United States financial markets generally" utilized.

59. With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

     a. The specific inputs and assumptions used to determine the utilized discount rate range of 7.5% to 9%;

     b. Apria's weighted average cost of capital utilized;

     c. The range of illustrative terminal values for Apria calculated;

     d. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 0.0% to 2.0%;

     e. The specific inputs and assumptions used to determine the utilized perpetuity implied exit terminal year Adjusted EBITDA Less Patient Equipment Capex multiples ranging from 5.5x to 9.2x;

     f. Apria's net operating losses for the fourth quarter of fiscal year 2021 through the end of fiscal year 2031;

     g. Apria's target capital structure weightings,

     h. The cost of long-term debt utilized;

     i. After-tax yield on permanent excess cash, if any, utilized;

     j. Future applicable marginal cash tax rate utilized;

     k. The beta for Apria utilized;

     l. The specific "certain financial metrics for the United States financial markets generally" utilized;

     m. Apria's net debt as of September 30, 2021; and

      n.   The number of fully-diluted shares of Apria common stock outstanding (using the treasury stock method) as of January 5, 2022.

60.    With respect to the *Premia Paid Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.   The specific metrics for each transaction analyzed.

61.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

62.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in her best interests as a public Apria stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

#### (Against All Defendants)

63.    Plaintiff repeats all previous allegations as if set forth in full herein.

64.    Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

65.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of her name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

66.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

67.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

68.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

69.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

70.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to vote her shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

#### (Against all Individual Defendants)

71.     Plaintiff repeats all previous allegations as if set forth in full herein.

72.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

73.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

74.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Apria's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

75.     The Individual Defendants acted as controlling persons of Apria within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Apria to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Apria and all of its employees. As alleged above, Apria is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 10, 2022

**BRODSKY & SMITH**

By: _____

Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*